**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CAPPY'S WINDOWS, INC., | : | |
| ADRIAN B. TREESE | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| v. | : | NO. 11-2767 |
| | : | |
| THE CINCINNATI INSURANCE CO., | : | |
|     Defendant | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                  **September 27, 2012**

      Adrian Treese, the owner of Cappy's Windows in Allentown, Pennsylvania, was the victim of a burglary, which resulted in the loss of inventory and equipment.  Treese filed this lawsuit against his insurance company, Cincinnati Insurance Company, alleging that he was improperly denied coverage for his destroyed business personal property. Cappy's Windows has filed a motion for summary judgment in which it contends that the terms of Tresse's policy clearly provide coverage for his business personal property; or, if the terms do not clearly provide him coverage, his reasonable expectations of coverage prevail.  Cincinnati has filed a cross motion for summary judgment in which it claims that the terms of the policy clearly provide coverage only for his building, and his reasonable expectations of coverage do not prevail.  For the following reasons, I will grant Cincinnati's motion for summary judgment and deny Cappy's Windows' motion for summary judgment.

I.      **BACKGROUND**

A.      **The Vandalism and Burglary at Cappy's Windows**

During the weekend of February 19, 2010, Cappy's Windows, Inc., a seller and installer of windows, doors, siding, and awnings, in Allentown, Pennsylvania, was the victim of a burglary.  (Treese Dep. 10:22-11:6, 58:9-24.)  The company lost inventory and equipment.  (Id. at 94:20-95:2.)  Adrian Treese is the sole shareholder of Cappy's Windows; he also owns the premises on which Cappy's Windows is located, as well as the property stolen and vandalized during the burglary.  (Id. at 133:16-20; Doc. No. 15-3 at 1.)

B.      **Treese's Insurance Coverage**

Lafayette Ambassador Bank required Treese to have insurance on the premises on which Cappy's Windows is located as part of its mortgage on the property.  (Treese Dep. 14:5-9, 32:14-16.)  His first policy fulfilling this requirement was with Donegal Insurance Company, which provided coverage for "Buildings," with a limit of $316,360, and for "Business Personal Property," with a limit of $126,360.  (Doc. No. 14-2 at 1.)  As a result of "some disagreements and some payment issues," Donegal discontinued Treese's policy in 2005.  (Treese Dep. 32:8-9, 33:3-5.)

After losing his Donegal policy, Treese contacted C.M. Stauffer Insurance Agency to acquire another policy to satisfy the bank.  (Id. at 32:8-10.)  Without a policy, the bank was planning to provide coverage at a much higher rate.  (Id. at 32:14-16.)  On April 8, 2005, Bruce Roehrig of C.M. Stauffer Insurance Agency submitted a commercial insurance application to Cincinnati Insurance Company, listing Adrian P. Treese as the

applicant and requesting "Building" coverage in the amount of $300,000.  (Doc. No. 15-10 at 6.)

Cincinnati issued a policy to Treese providing insurance as requested in the application, which Treese reviewed "[t]o some extent."  (Treese Dep. 50:24-51:1.)  After this initial Cincinnati policy ended in 2008, C.M. Stauffer submitted a renewal application to Cincinnati on April 7, 2008, requesting "Building" coverage for 2008 to 2011 for $330,000.  (Doc. No. 15-10 at 16-18.)  The policy was renewed for the period of April 8, 2008, to April 8, 2011.  (Doc. No. 15-5 at 2.)  On the Commercial Property Coverage Part Declarations page, the "Coverage Provided" lists "Building," with a limit of $330,000.  (Doc. No. 15-5 at 16.)

On May 12, 2010, Treese's attorney, Vincent Cavacini, initiated loss claim proceedings on his behalf for the stolen and destroyed items inside the building by sending a letter to Roehrig at C.M. Stauffer Insurance Agency.  (Doc. No. 15-10 at 24.)  The letter contends that the "losses are covered under a commercial insurance policy issued by your office through Cincinnati Insurance Company, which was issued on April 8, 2008."  (Id.)  The letter also requests a proof of loss form from Cincinnati to claim a loss of $68,943.08.  (Id.)  By letter dated June 15, 2010, Cincinnati informed Cavacini that Treese did not purchase insurance for business personal property; thus, there was "no coverage for this loss."  (Id.)  On August 12, 2010, Cavacini sent a proof of loss form to Cincinnati, claiming losses of $71,063.55 for the stolen tools, damaged inventory, and damaged real estate.  (Doc. No. 15-10 at 34-35.)  On August 20, 2010, Cincinnati

rejected Treese's claim due to a lack of "business personal property coverage applicable

to this policy."[1]  (Doc. No. 15-10 at 42.)

---

[1] The policy's "Building and Personal Property Coverage Form" outlines Cincinnati's obligations for "Business Personal Property":

**SECTION A. COVERAGE**

We will pay for direct physical "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

**1.  Covered Property**

Covered property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

     *       *       *

**d.  Business Personal Property**

Your Business Personal Property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the "premises."  Your Business Personal Property consists of the following unless otherwise specified in the Declarations or on the **BUSINESS PERSONAL PROPERTY – SEPARATION OF COVERAGE ENDORSEMENT**.

  (1)  Furniture;
  (2)  Machinery and equipment;
  (3)  "Stock";
  (4)  All other personal property owned by you and used in your business;
  (5)  The cost of labor, material or services furnished or arranged by you on personal property of others;
  (6)  Your use interest as tenant in improvements and betterments.  Improvements and betterments are fixtures, alterations, installations, or additions:
    (a)  Made a part of the building or structure you occupy but do not own; and
    (b)  You acquired or made at your expense but cannot legally remove;
  (7)  Leased personal property used in your business for which you have a contractual responsibility to insure.  Such leased property is not considered personal property of others in your care, custody or control;
  (8)  Personal Property of Others that is in your care, custody or control or for which you are legally liable.
    (a)  This does not include personal effects owned by you, your officers, your partners, or if you are a limited liability company, your members or your managers, or your employees (including leased and temporary workers), except as provided in **5.  Coverage Extensions, I. Personal Effects**;
    (b)  This does not include property of others for which you are legally liable as:
      1)  A carrier for hire; or
      2)  An arranger of transportation, including carloaders, consolidators, brokers, freight forwarders, or shipping associations; and
  (9)  Sales samples.

(Doc. No. 15-5 at 21-22.)  The policy also contains the CinciPlus Commercial Property Expanded Coverage (XC) Plus Endorsement ("CinciPlus Endorsement"), which states:

4

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is "material" only if it might affect the outcome of the case.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  For an

---

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**The Insurance coverage and Limits of Insurance provided by this endorsement are excess of, and apply in addition to, any similar or identical coverage provided by any other endorsement attached to this Coverage Part, or by any other Coverage Part forming a part of the policy of insurance of which this Coverage Part forms a component.**

**SCHEDULE**

| | |
|---|---|
| **Blanket Coverage Limit** | **$150, 000** |
| Applicable only to those coverages subject to the Blanket Coverage Limit, as indicated in this endorsement | |

*                           *                           *

**P.  Personal Property of Others**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

<u>Personal Property of Others</u>

In the event that the limit of insurance stated in the Declarations for Business Personal Property is insufficient to fully insure a covered "loss" to both your Covered Property and that which would specifically be the subject of **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property**, Subpart (8), you may apply the Blanket Coverage Limit as provided in Section X. of this endorsement to such property as contemplated by **Section A. COVERAGE, 1. Covered Property, d. Business Personal Property**, Subpart (8).

*                           *                           *

**X.  Blanket Coverage Limit**

We will pay up to the Limit of Insurance stated in the Schedule of this endorsement in total in any one occurrence for the sum of all "loss" insured under coverages provided in this endorsement which are subject to the Blanket Coverage Limit.  You may apportion this Limit among these coverages as you choose.

(Doc. No. 15-6 at 33, 40.)

issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

A party moving for summary judgment always bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c).  Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992).

Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.  The nonmoving party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather, must present clear evidence from which a jury can reasonably find in its favor.  Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999).   Finally, in reviewing a motion for summary judgment, the Court does not make credibility determinations and must

view facts and inferences in the light most favorable to the party opposing the motion. Siegel Transfer v. Carrier Express, 54 F.3d 1125, 1127 (3d Cir. 1995).

## III.   DISCUSSION

Cincinnati is entitled to summary judgment because (1) Treese's policy terms clearly and unambiguously do not provide coverage for his business personal property and (2) the reasonable expectations doctrine does not apply to Treese's circumstances.  In interpreting insurance policies, where the language of the policy is clear and unambiguous, a court must give effect to the plain meaning of that language.  The language in Treese's policy is clear: it provides him with coverage only for his building and not for his business personal property.  Absent sufficient justification, the reasonable expectations doctrine will not apply where the policy limitations are clear and unambiguous.  Here, those justifications are not present.  Therefore, no genuine dispute of material fact exists on either of Treese's claims.

### A.   Treese's Business Personal Property Claim

Treese's Cincinnati insurance policy does not provide coverage for his stolen and vandalized business personal property.  The principles governing insurance contract interpretation in Pennsylvania are well established.  Standard Venetian Blind Co. v. American Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983).  Contracts are interpreted by the court, not the jury.  See, e.g., Gonzalez v. U.S. Steel Corp., 398 A.2d 1378, 1385 (Pa. 1979).  The court's goal is to determine the intent of the parties from looking at the language in the written policy.  See Mohn v. American Cas. Co. of Reading, 326 A.2d 346, 351 (Pa. 1974).  Any ambiguous provisions will be construed against the insurance

company as the drafter.  See id.  But where the language of an insurance policy is clear and unambiguous, a court must "give effect" to the "plain and ordinary meaning" of the language.  See Pa. Mfrs.' Ass'n Ins. Co. v. Aetna Cas. & Surety Ins. Co., 233 A.2d 548, 551 (Pa. 1967).

Here, the language of Treese's Cincinnati policy is clear and unambiguous.  It provides coverage only for his building.  Under **SECTION A. COVERAGE**, Cincinnati "will pay for direct physical 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss."  Under **1. Covered Property**, "Covered Property" is defined as the "types of property for which a Limit of Insurance is shown in the Declarations."  On the Commercial Property Coverage Part Declarations page, Treese's only declaration listed is for "Building," with a limit of insurance of $330,000; there is no declaration with a limit of insurance for business personal property.[2]  The lack of any limit of insurance for business personal property on the declarations page is strong evidence that this level of coverage was not contemplated by the parties.

Treese misinterprets the policy as providing coverage for his business personal property by reading certain provisions in isolation from other critical provisions.  He argues that the use of the term "business personal property" in **SECTION A. COVERAGE** "reasonably communicates" to a policy reader that there is coverage for business personal property.  The section he refers to is **1. Covered Property**, which lists business personal property, among others, as a type of property that the policy potentially

---

[2]  In Treese's answer to Cincinnati's motion for summary judgment, he concedes that "the Declaration does not specifically identify Business Personal Property."  (Doc. No. 18-2 at 3.)

covers.  However, before listing business personal property as a type of coverage, the policy clearly states that property will only be covered if there is a limit of insurance for it in the declarations.  Again, the only limit of insurance in the declarations is for "Building"—not for business personal property.  He further contends that the "non-descript" phrase, "for which a Limit of Insurance is shown in the Declarations," does not limit coverage because it is not "bold and unequivocal."  This contention fails because the phrase is the only phrase directly under **1. <u>Covered Property</u>**, which is sufficiently bolded and underlined as to call attention to its importance.

Treese also wrongly claims that he has business personal property coverage under the CinciPlus Endorsement.  In support of this position, he references the following portion of the Commercial Property Coverage Part Declarations page:

| FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART |
| --- |
| **FA450       11/04    FM101       04/04   FA4042   04/04   CP0121   06/95** |
| **FA4013PA   11/02    FA4028PA   11/05   FA250     04/06   FA4053  04/06** |

(Doc. No. 15-5 at 16.)

According to Treese, because the Commercial Property Coverage Part Declarations page lists Forms FA250 04/06 and FA4053 04/06, which are the CinciPlus Endorsement and the CinciPlus Endorsement Summary of Coverage Limits, as "form[s] and/or endorsement[s] applicable to this coverage part," then the $150,000 blanket

9

coverage limit listed in the CinciPlus Endorsement is the applicable limit of insurance referred to in **SECTION A. COVERAGE** under **1. <u>Covered Property</u>**.[3] Simply put, Treese claims his business personal property is covered under the CinciPlus Endorsement with a limit of insurance of $150,000.

Treese argues that this $150,000 blanket coverage limit provides him coverage under **P.  Personal Property of Others** of the CinciPlus Endorsement.  Treese misinterprets the CinciPlus Endorsement by reading certain provisions in isolation from other critical provisions.  The CinciPlus Endorsement qualifies the $150,000 blanket coverage as being "[a]pplicable only to those coverages subject to the Blanket Coverage Limit, as indicated in this Endorsement."  In "this Endorsement," **P.  Personal Property of Others** states that the $150,000 coverage extension applies only "[i]n the event that the limit of insurance in the Declarations for Business Personal Property is insufficient to fully insure a covered 'loss' to both your Covered Property and that which would specifically be the subject of **SECTION A. COVERAGE, 1. <u>Covered Property</u>, d. Business Personal Property**."  In other words, there must be a limit of insurance for business personal property listed in the declarations in order for **P.  Personal Property of Others** of the CinciPlus Endorsement to apply.[4]  Here, again, the Commercial Property

---

[3]  "Covered Property, as used in this Coverage Part, means the following types of property for which a limit of insurance is shown in the Declarations."  (Doc. No. 15-5 at 21.)

[4]  The CinciPlus Endorsement's $150,000 blanket coverage is clearly expanded coverage only for types of coverage listed with a limit of insurance in **SECTION A. COVERAGE**.  This is partially evident from the title: CinciPlus Commercial Property *Expanded Coverage* (XC) Plus Endorsement.  (emphasis added).  This is also made clear at the top of the form, which states:

> **The Insurance coverage and Limits of Insurance provided by this endorsement are *excess of, and apply in addition to,* any similar or identical coverage provided by any other endorsement attached to this Coverage Part, or by any other Coverage Part forming a part of the policy of insurance of which this Coverage Part forms a component.**  (emphasis added).

Coverage Part Declarations page does not list a limit of insurance for business personal property.  Therefore, a plain reading of the whole CinciPlus Endorsement leads to the conclusion that the $150,000 blanket coverage does not apply to Treese's business personal property.  Accordingly, Cincinnati's motion for summary judgment is granted on Count I for declaratory judgment and Count III for breach of contract.

###    B.    Treese's Reasonable Expectations of Coverage

Treese claims that his reasonable expectations of coverage were not met.  This is not a basis for relief in this case.[5]  Pennsylvania case law indicates that the "proper focus for determining issues of insurance coverage is the reasonable expectations of the insured."  Reliance Ins. Co. v. Moessner, 121 F.3d 895, 903 (3d Cir. 1997).  Usually, the insurance policy's language will "provide the best indication of the content of the parties' reasonable expectations."  Bensalem Tp. v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1309 (3d Cir. 1994).  Courts, however, need to look at "the totality of the insurance transaction involved to ascertain the reasonable expectations of the insured."  Dibble v.

---

In his motion for summary judgment, Treese concedes that the CinciPlus Endorsement is expanded coverage when he states that "[i]t should be noted that the CinciPlus Endorsement adds to the coverage already provided in the underlying policy for 'Personal Property of Others.'"  (Doc. No. 14 at 7.)  He is mistaken, however, in his assertion that he has coverage in the underlying policy for **P.  Personal Property of Others**.  In order to have expanded coverage under **P.  Personal Property of Others**, he must have a limit of insurance for business personal property in the Commercial Property Coverage Part Declarations—which he does not.

[5]  In Treese's motion for summary judgment and his answer to defendant's motion for summary judgment, he argues that the reasonable expectations doctrine provides him relief.  However, he does not raise this argument in his complaint.  Instead, under Count II, Reformation, he claims that the policy should be reformed based on a "mutual mistake of fact."  (Doc. No. 14-3 at 7.)  His motion for summary judgment argues mutual mistake as it relates to his Cincinnati policy naming the insured as Adrian P. Treese, rather than naming the insured as the entity, Cappy's Windows.  Additionally, in his answer to defendant's motion for summary judgment, he refers to the mutual mistake argument once, but then argues for relief based on the reasonable expectations doctrine.  As a result, I address his reasonable expectations argument as falling under Count II, Reformation.  His mutual mistake argument pertaining to the named insured party in the policy fails because his policy does not provide business personal property coverage under either name, Adrian P. Treese or Cappy's Windows.

Sec. of Am. Life Ins. Co., 590 A.2d 352, 354 (Pa. Super. Ct. 1991).  Consequently, "even

the most clearly written exclusion will not bind the insured where the insurer or its agent

has created in the insured a reasonable expectation of coverage."  Reliance Ins. Co., 121

F.3d at 903.  But this aspect of the doctrine is only applied "in very limited

circumstances" to protect non-commercial insureds from policy terms not readily

apparent and from insurer deception.  Madison Constr. Co. v. Harleysville Mut. Ins. Co.,

735 A.2d 100, 109 n.8 (Pa. 1999).  Absent sufficient justification, "an insured may not

complain that his or her reasonable expectations were frustrated by policy limitations that

are clear and unambiguous."  Frain v. Keystone Ins. Co., 640 A.2d 1352, 1354 (Pa. Super

Ct. 1994).

In Tonkovic v. State Farm Mutual Automobile Ins. Co., the Supreme Court of

Pennsylvania set forth a "crucial distinction" to consider when applying the reasonable

expectations doctrine to an insurance coverage dispute.  521 A.2d 920, 925 (Pa. 1987).

There, the insured, Tonkovic, had applied for an insurance policy providing him with

disability coverage through State Farm.  Id. at 921.  He had applied for disability

insurance that would cover his mortgage in the event of an injury, regardless of where the

injury occurred, or whether he was eligible for worker's compensation benefits.  Id.

Tonkovic was subsequently injured on the job and began receiving worker's

compensation benefits.  Id. at 922.  He then filed a claim under his State Farm policy,

which was denied because his policy did not cover workplace injuries for which workers

compensation benefits were available.  Id.  But the policy he had originally applied and

paid for did not contain this exclusion, and he was never provided with a written policy

12

or had this different policy explained to him by the agent, indicating that the agent had unilaterally changed the policy and not informed Tonkovic.  Id.  On these facts, the court held that where "an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy."  Id. at 925.

In holding that Tonkovic's reasonable expectations were not met, the court distinguished the facts of his case with those of Standard Venetian Blind Co. v. American Empire Ins. Co., 469 A.2d 563 (Pa. 1983), in order to demonstrate a factual scenario in which the reasonable expectations doctrine will not apply.  See id. at 924-25.  In Venetian Blind, Morris, a self-employed businessman, bought a general liability policy on behalf of Venetian Blind, the company of which he was a partner.  469 A.2d at 565.  The policy, which was purchased through Block Brothers Insurance Company, provided personal and property damage liability for all "sums which the insured shall be legally obligated to pay as damages" and also provided that American had "the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage" up to the policy limits.  Id.  The policy also "conspicuously displayed and sequentially listed" certain types of claims for which American would not cover Venetian Blind.  Id.

Subsequent to his purchase of the policy, an action in assumpsit was brought against Morris and Venetian Blind, prompting Morris to notify American of his claim for representation in the matter and for reimbursement for damaged Venetian Blind products.

13

Id.  American, citing one of the express exclusions, refused to defend the assumpsit

action or pay for the damaged Venetian Blind products.  Id.  In response, Morris claimed

that he was unaware of the exclusions because he had relied on the judgment of Block

Brothers Insurance Company, to whom he had indicated that he wanted "full coverage on

everything we have."  Id.  Concluding that the exclusions were "plain and free of

ambiguity" and "could have been readily comprehended by Mr. Morris had he chosen to

read them," the court held that Venetian Blind was bound by the policy it signed and that

allowing Venetian to "avoid application of the clear and unambiguous policy limitations

in these circumstances would require us to rewrite the parties' written contract."  Id. at

566.

The "crucial distinction" in Tonkovic limits the reasonable expectations doctrine

and distinguishes Tonkovic from this case.  Here, the record does not contain any

evidence that Cincinnati unilaterally changed Treese's policy without notifying him.  To

the contrary, Treese's policy mirrors the renewal application that C.M. Stauffer Insurance

Agency submitted to Cincinnati on behalf of Treese.  The application requested

"Building" coverage in the amount of $330,000.  Based on this application, Treese was

issued a policy that clearly and unambiguously provided "Building" coverage with a limit

of insurance of $330,000.  Thus, Treese cannot claim that Cincinnati affirmatively

misrepresented the policy or unilaterally changed it as to defeat his reasonable

expectations of coverage.

A consideration of Venetian Blind reinforces this conclusion.  Similar to the

insured in Venetian Blind, Treese argues that his reasonable expectations of coverage

14

were not met because he relied on his insurance agency's judgment to provide the necessary coverage.  Because his C.M. Stauffer agent, Roehrig, visited his premises, saw his tools and equipment, and also had a copy of his old Donegal policy providing business personal property coverage, Treese claims that he had a reasonable expectation that his business personal property would be covered under his Cincinnati policy.  But, like in Venetian Blind, the limitations of Treese's Cincinnati policy are plain and free of ambiguity.  He could have discovered them by reading the policy, instead of just reviewing "[i]t to some extent."  Thus, the very limited circumstances in which the reasonable expectations doctrine applies—where protection is needed from unclear terms or insurer deception—are not exhibited in Treese's claim.[6]  Consequently, no genuine dispute of material fact exists, and summary judgment is granted for Cincinnati on his claim for reformation in Count II.

## III.    CONCLUSION

Based on the foregoing, I will grant Cincinnati's motion for summary judgment and deny Cappy's Windows' motion for summary judgment.

An appropriate Order follows.

---

[6]  Treese wrongly claims that his C.M. Stauffer agent, Roehrig, is an agent of Cincinnati, thereby rendering Cincinnati liable for his actions.  However, when a person uses an insurance broker and permits that broker to choose the insurance company, the broker is the agent of the insured rather than the insurer.  Taylor v. Crowe, 282 A.2d 682, 683 (Pa. 1971).